IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-386 |
| v. | ) |
| CITY OF GARY, INDIANA, | ) |
| Defendant. | ) |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

**Nature of Action**

1. This is a civil action brought by the United States against the City of Gary, Indiana ("City") to resolve violations at the Gary Sanitary Landfill ("Landfill") located in Gary, Indiana. The Landfill is a closed municipal solid waste landfill owned and operated by the City and subject to an air permit issued by the Indiana Department of Environmental Management ("IDEM").

2. Since at least 1999, the City has been required to operate, monitor, and maintain a gas collection and control system ("GCCS") capable of handling air pollution generated by decomposing waste. The City has never installed an adequate GCCS and has failed to properly

operate, monitor, and maintain the current system, resulting in emissions of methane, volatile organic compounds ("VOCs"), and other hazardous air pollutants.

3. The United States asserts claims in this action under the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7401 *et seq.*, and seeks injunctive relief and civil penalties against the City.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395(a), because the City is in the Northern District of Indiana and the landfill at which the alleged violations occurred and continue to occur is within the Northern District of Indiana.

## Notice

6. The United States has provided notice of the commencement of this action to IDEM pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b). In accordance with Section 113(a) of the CAA, 42 U.S.C. § 7413(a), EPA notified the City of the violations of the CAA alleged in this complaint more than 30 days prior to its filing.

## The Parties

7. Plaintiff, the United States of America, is acting by authority of the Attorney General of the United States and through the undersigned attorneys, on behalf of the Administrator of EPA. Authority to bring this action is vested in the Attorney General of the United States by Section 305 of the CAA, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

8. Defendant, City of Gary, is a municipality incorporated under the laws of Indiana and located in Lake County, Indiana.

9. The City is a "municipality" within the meaning of Section 302(f) of the CAA, 42 U.S.C. § 7602(f), and is therefore a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## Statutory Background

10. The CAA regulates "criteria pollutants," "designated pollutants," and "hazardous air pollutants" using a combination of federal and state-administered programs.

11. Section 111 of the CAA regulates "designated pollutants" through Standards of Performance for new and existing sources. The Act defines "designated pollutants" as pollutants that "may reasonably be anticipated to endanger public health or welfare" but are neither "criteria pollutants" (regulated under sections 108 and 109 of the Act) nor "hazardous air pollutants." 42 U.S.C. § 7411(b).

12. Section 112 of the CAA regulates pollutants that are known or suspected to cause cancer or other serious health problems, such as birth defects, or adverse environmental effects. These pollutants, known as "hazardous air pollutants," are controlled through National Emissions Standards for Hazardous Air Pollutants.

**Standards of Performance for Existing Sources**

13. Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires EPA to list categories of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

14. Section 111(d) of the CAA, 42 U.S.C. § 7411(d), provides that EPA must establish a system that requires states to set standards of performance for existing sources. EPA

implements this mandate in 40 C.F.R. Part 60, which provides that EPA will promulgate "emissions guidelines" for existing sources in each of the categories of stationary sources listed under Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A). Part 60 further provides that each state must submit a State Plan adopting EPA's emissions guidelines for each source category present in the state. 40 C.F.R. § 60.23.

15. The State Plan must contain procedures to implement and enforce performance standards for existing sources. 42 U.S.C. § 7411(d)(1)(B).

16. Once approved by EPA, both EPA and the state can enforce the State Plan. 42 U.S.C. § 7411(d)(1)(B), (d)(2)(B).

17. On March 12, 1996, pursuant to Section 111(d) of the CAA and 40 C.F.R. part 60, EPA promulgated emissions guidelines for existing municipal solid waste ("MSW") landfills at 40 C.F.R. part 60, subpart CC. 40 C.F.R. §§ 60.30c–60.36c; 61 Fed. Reg. 9905. These emissions guidelines are intended to control MSW landfill gas emissions.

18. On March 28, 2000, EPA approved Indiana's State Plan to implement the emissions guidelines for existing MSW landfills. 65 Fed. Reg. 16,323 (effective May 30, 2000).

**National Emission Standards for Hazardous Air Pollutants**

19. Section 112(b) of the CAA, 42 U.S.C. § 7412(b), establishes a list of 188 hazardous air pollutants ("HAPs") which present a threat of adverse human health effects or adverse environmental effects.

20. Pursuant to Section 112(c) of the CAA, 42 U.S.C. § 7412(c), EPA must publish a list of all categories and subcategories of HAP sources.

21. Section 112(d) of the CAA, 42 U.S.C. § 7412(d), requires EPA to promulgate regulations establishing emission standards for each category and subcategory of HAP sources.

4

These emission standards are known as National Emission Standards for Hazardous Air Pollutants ("NESHAPs"), and are codified at 40 C.F.R. parts 61 and 63. Numerous "source categories" are regulated under the NESHAPs, including MSW landfills (40 C.F.R. Part 63, Subpart AAAA).

22. The NESHAPs apply to specific categories of sources that emit HAPs, including "major sources," "area sources," and "stationary sources." A "major source" is any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit 10 tons of any HAP, or 25 tons per year or more of any combination of HAPs, per year. 42 U.S.C. § 7412(a)(1). An "area source" is any stationary source of HAPs that is not a major source. 42 U.S.C. § 7412(a)(2). A "stationary source" is any building, structure, facility, or installation which emits or may emit any air pollutant. 42 U.S.C. § 7412(a)(3) (by reference to 42 U.S.C. § 7411(a)(3)).

23. Under Section 112(i)(3) of the CAA, no person may operate a source in violation of NESHAPs. 42 U.S.C. § 7412(i)(3). Thus, a violation of a NESHAP regulation is a violation of the Act.

24. On January 16, 2003, pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), EPA promulgated NESHAPs for MSW landfills at 40 C.F.R. Part 63, Subpart AAAA. 68 Fed. Reg. 2227.

25. The NESHAP covers a subset of existing MSW landfills, including those with a design capacity of at least 2.5 million megagrams and 2.5 million cubic yards and annual non-methane organic compound ("NMOC") emissions of at least 50 megagrams. 40 C.F.R. § 63.1935(a)(3). Covered MSW landfills must continue to comply with State Plan requirements,

approved under Section 111(d) of the CAA, 42 U.S.C. § 7411(d), and meet additional reporting requirements. 40 C.F.R. § 63.1955.

**Indiana's State Plan for Existing Municipal Solid Waste Landfills**

26. Indiana's State Plan incorporates the federal performance standards for new MSW landfills found at 40 C.F.R. part 60, subpart WWW, 40 C.F.R. §§ 60.751–60.759, and applies them to existing MSW landfills. 326 Ind. Admin. Code 8-8.

27. Under 326 Ind. Admin. Code 8-8-2, an "existing" MSW landfill is "an MSW landfill that has accepted waste since November 8, 1987, or that has capacity available for future use and for which construction commenced prior to May 30, 1991." An existing landfill can be either active or closed.

28. Indiana's State Plan and 40 C.F.R. § 60.752(b)(2) require owners and operators of existing MSW landfills with design capacities equal to or greater than 2.5 million megagrams and 2.5 million cubic meters to meet certain GCCS requirements, unless it can be demonstrated that the landfill has an NMOC emission rate of less than 50 megagrams per year. 326 Ind. Admin. Code 8-8-3(a)(2); 40 C.F.R. § 60.752(b)(2). A GCCS captures and destroys landfill gases by using either passive or active gas collection to funnel landfill gases to a flare or other treatment system. Landfills without liners to cover the bottom and sides of the landfill require an active gas collector designed to minimize the amount of subsurface gas that migrates off-site.

29. Owners and operators of qualifying landfills must install a GCCS after the first annual report indicates that calculated NMOC emissions are greater than 50 megagrams per year. 326 Ind. Admin. Code 8-8-3(a)(2); 40 C.F.R. § 60.752(b)(2)(ii).

30. Under Indiana's State Plan, proper operation of a GCCS includes directing all collected gases to the flare or other treatment device and operating the flare or other treatment

device at all times when the GCCS is collecting gas.  326 Ind. Admin. Code 8-8-3(a)(3); 40 C.F.R. § 60.753(e), (f).  If the flare or other treatment device becomes disabled, the gas collector must be shut down and all valves venting gases to the atmosphere must be closed within one hour.  326 Ind. Admin. Code 8-8-3(a)(3); 40 C.F.R. § 60.753(e).

31. For a GCCS using a flare to destroy landfill gases, Indiana's State Plan requires the owner or operator to "install, calibrate, maintain, and operate" a device capable of verifying the presence of a flame and a device capable of recording the gas flow to (or bypass of) the flare.  326 Ind. Admin. Code 8-8-3(a)(6); 40 C.F.R. § 60.756(c).

32. Indiana's State Plan requires that owners and operators of qualifying existing MSW landfills monitor the surface concentration of methane and "operate the [GCCS] so that the methane concentration is less than 500 parts per million above background at the surface of the landfill."  326 Ind. Admin. Code 8-8-3(a)(3), (5); 40 C.F.R. §§ 60.753(d), 60.755(c)(1).  Upon detection of an exceedance of the surface methane concentration standard, 40 C.F.R. § 60.755(c) requires owners and operators to re-monitor the location of the detected exceedance within 10 calendar days.

33. Indiana's State Plan requires the owner or operator to monitor the gauge pressure, temperature, and nitrogen or oxygen concentration at each landfill gas well.  326 Ind. Admin. Code 8-8-3(a)(5); 40 C.F.R. § 60.755(a)(3), (5).

**Title V Operating Permit Requirements**

34. Title V of the CAA establishes an operating permit program for sources of air pollution. 42 U.S.C. §§ 7661–7661f.  Among other triggers, sources must obtain Title V permits if they are subject to regulation under Sections 111 or 112 of the CAA, 42 U.S.C. §§ 7411 or 7412.  42 U.S.C. § 7661a.

7

35. Under Section 502(d) of the CAA, 42 U.S.C. § 7661a(d), each state must submit, for EPA approval, an operating permit program that meets the requirements of Title V.

36. After the effective date of any state permit program approval under Title V of the CAA, no source subject to Title V may operate except in compliance with a Title V operating permit. 42 U.S.C. § 7661a. A Title V permit consolidates all of a stationary source's state and federal CAA obligations into one permit. 42 U.S.C. § 7661a(f).

37. EPA fully approved Indiana's Title V operating permit program on December 4, 2001. 66 Fed. Reg. 62,969.

38. CAA Section 502(a), 42 U.S.C. § 7661a(a), the implementing regulations at 40 C.F.R. § 70.7(b), and Indiana's Title V operating permit program regulations, 326 Ind. Admin. Code 2-7-3, all make it unlawful to violate a requirement of a Title V permit or to operate any source subject to Title V except in compliance with a permit issued by a permitting authority under Title V.

39. IDEM issued Title V operating permits to the City of Gary for the Gary Sanitary Landfill on October 5, 2009 (Operating Permit: T089-11966-00143), July 11, 2012 (T089-l 1966-00143), and September 25, 2014 (T089-34007-00143).

40. The City's operating permit requires the City and Landfill to comply with the requirements of Indiana's State Plan for existing MSW landfills, 326 Ind. Admin. Code 8-8 (incorporating by reference the federal New Source Performance Standards for MSW landfills at 40 C.F.R. part 60, subpart WWW, 40 C.F.R. §§ 60.751–60.759). The City's operating permit also subjects the City to the additional requirements in the NESHAP for MSW landfills at 40 C.F.R. Part 63, Subpart AAAA, 40 C.F.R. §§ 63.1930–63.1990. Both Indiana's State Plan and the NESHAP for MSW landfills require Gary to install an active GCCS.

**Federal Enforcement Provisions**

41.     Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), EPA may bring a civil action in accordance with Section 113(b), 42 U.S.C. § 7413(b), where the Agency finds that any person has violated, among other things: (1) a standard of performance in a Section 111(d) State Plan; (2) the NESHAP regulations codified at 40 C.F.R. §§ 61 and 63; or (3) a state permit issued in accordance with Title V of the CAA.

42.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, the United States may seek injunctive relief and civil penalties of up to $37,500 per day for each violation occurring from January 13, 2009 through November 2, 2015; and up to $101,439 per day for each such violation occurring after November 2, 2015. 40 C.F.R. § 19.4.

<u>**General Allegations**</u>

**Gary Sanitary Landfill**

43.     The Landfill is located at 1900 Burr Street in Gary, Indiana.

44.      The Landfill began collecting municipal solid waste in the mid-1950s and continued accepting waste until 1997.  In 1997, the Landfill closed.

45.     The Landfill has a design capacity of 3.6 million megagrams and 4.8 million cubic meters.

46.     The Landfill is estimated to emit at least 50 megagrams of NMOC per year and has done so every year since the City first calculated emissions on April 7, 2000.

47. The City is an "owner or operator" of the Landfill within the meaning of Sections 111(a)(5) and 112(a)(9) of the CAA, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9).

48. The Landfill is a "stationary source" within the meaning of Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3), subject to one or more NESHAPs found at 40 C.F.R. Part 63.

49. The Landfill is an "existing" "MSW landfill" within the meaning of 326 Ind. Admin. Code 8-8-2 and 40 C.F.R. Part 63, subpart AAAA, 40 C.F.R. §§ 63.1935(a)(3), 63.1940.

50. The Landfill's design capacity and NMOC emissions subject it to Indiana's 111(d) State Plan and the MSW landfill NESHAP, both of which require the City to comply with the MSW landfill New Source Performance Standards at 40 C.F.R. part 60, subpart WWW. 40 C.F.R. §§ 60.751–60.759.

51. The City's 2009, 2012, and 2014 Title V permits require the City to comply with the MSW landfill New Source Performance Standards at 40 C.F.R. part 60, subpart WWW. 40 C.F.R. §§ 60.751–60.759.

52. The Landfill's bottom and sides are unlined. The Landfill's cap design is a geosynthetic clay liner, covered by three feet of sand and vegetated with beachgrass. The design provides that sloping areas be covered in a two-foot clay layer and six inches of topsoil, planted with rye and fescue.

**The Landfill's GCCS**

53. The Landfill has two gas collection systems. Along the west side of the Landfill, the City operates ten active gas-collection wells which route captured gases to a single, open flare, known as the "west flare." The active gas collection system only controls the gases produced by a portion of the Landfill. The remainder of the Landfill is covered by twenty-three

passive gas-collection wells, each equipped with a solar-powered igniter that sparks to ignite landfill gases.

54. EPA never approved the Landfill's current GCCS and the design does not comply with the City's Title V permit or Sections 111 and 112 of the CAA, 42 U.S.C. §§ 7411 and 7412.

55. The GCCS's deficient design and the City's failure to properly operate, maintain, and monitor the GCCS allow emissions of landfill gases to escape through the cap and migrate off-site along the Landfill's surface or through the subsurface. Erosion of the Landfill's cap reduces the efficacy of both the active and passive systems.

**Landfill Gas Emissions**

56. As the organic materials in a landfill decompose, they emit methane, carbon dioxide, nitrogen, and NMOCs. An effective GCCS captures these gases and destroys the methane and NMOCs. Uncontrolled landfill gas emissions pose multiple public health concerns.

57. Methane can pose a threat if collecting below or above ground. The Landfill's methane emissions can migrate off-site via natural and manmade underground pathways and accumulate in underground structures like basements. A concentration of 5–15% methane by volume poses an explosion hazard. Subsurface monitoring probes have detected methane levels above 60% along the Landfill boundary.

58. The NMOCs emitted by landfills include volatile organic compounds ("VOCs") and HAPs. VOCs contribute to the formation of ground-level ozone, which causes decreased respiratory function, even among healthy individuals. Those with asthma or other existing respiratory ailments face a higher risk of harm. Ozone is also known to damage crops and vegetation and can cause materials like rubber to prematurely degrade. The City is in an area (Lake County) designated as nonattainment for the 8-hour ozone standard. Thus, any additional

11

VOC emissions contribute to the area's nonattainment. HAPs are pollutants that are known or suspected to cause cancer or other serious health problems, such as birth defects, or adverse environmental effects. Among other HAPs, landfills are known to emit benzene, vinyl chloride, toluene, and perchloroethylene.

59. Nearly 6,000 people live within one mile of the Landfill.

**EPA's Inspections and Information Request**

60. On December 21, 2015, EPA sent the City an information request pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, seeking information about the City's operation, maintenance, and monitoring of the GCCS.

61. The City's response reveals that, for approximately 570 days between January 2011 and December 2015, the City cannot verify that the west flare was lit. The passive flares also operated inconsistently during that period.

62. During inspections on November 30, 2015, and February 4, 2016, EPA inspectors observed that when the solar flares or the west flare were extinguished, the City did not take action to decrease fugitive emissions by shutting down the system within one hour. On these occasions, EPA inspectors observed odors on the surface of the Landfill.

63. On November 30, 2015, EPA inspectors observed that the main blower for the active GCCS was not operating. And on February 4, 2016, EPA inspectors found the main header line leading from the active gas-collection wells to the west flare disconnected, allowing untreated landfill gases to bypass the flare and vent into the atmosphere.

64. According to the City's response to EPA's information request, the City did not monitor surface emissions from the Landfill until December 15 and 16, 2015. Without this monitoring the City cannot ensure that the GCCS is adequately capturing gas emissions.

65. The monitoring conducted on December 15 and 16, 2015 detected exceedances of the surface methane standard at four locations, and the City did not re-monitor the location of the detected exceedances.

66. According to the City's response, the City does not have heat-sensors or flow meters on any of its flares. Without these devices the City is unable to ensure that the flares are destroying gas emissions at all times.

67. The City did not monitor its active gas collection system for wellhead pressure, temperature, or oxygen/nitrogen concentration until April 12, 2016.

68. On March 9, 2016, EPA sent the City a Notice and Finding of Violation, which identified numerous violations of the City's permit and Sections 111 and 112 of the CAA.

### First Claim for Relief

**Violation of Title V permit, Indiana State Plan, and Sections 111 and 112 of the CAA – Failure to Install a Compliant GCCS**

69. Paragraphs 1 through 68 are realleged and incorporated by reference.

70. The City's 2009, 2012, and 2014 Title V permits; Indiana's 111(d) State Plan, 326 Ind. Admin. Code 8-8; and the MSW landfill NESHAP, 40 C.F.R. part 63, subpart AAAA, each require the City to comply with 40 C.F.R. § 60.752(b)(ii).

71. Under 40 C.F.R. § 60.752(b)(ii), the City has been required to install an active GCCS to capture and destroy the Landfill's gas emissions since at least 2002.

72. The City has never installed an active GCCS to capture and destroy gas emissions from the entire landfill.

73. The violations set forth in Paragraphs 69 through 72 subject the City to injunctive relief and civil penalties as set forth in Paragraph 42.

## Second Claim for Relief

**Violation of Title V permit, Indiana State Plan, and Sections 111 and 112 of the CAA – Failure to Operate the Installed GCCS**

74. Paragraphs 1 through 68 are realleged and incorporated by reference.

75. The City's 2012 and 2014 Title V permits; Indiana's 111(d) State Plan, 326 Ind. Admin. Code 8-8; and the MSW landfill NESHAP, 40 C.F.R. part 63, subpart AAAA, each require the City to comply with 40 C.F.R. § 60.753(e), (f).

76. Under 40 C.F.R. § 60.753(e), the City is required to operate a GCCS such that all captured gases are directed to the flare or other treatment device. If the collection system or treatment device becomes disabled, the City is required to stop the venting of untreated gases to the atmosphere within one hour.

77. On numerous occasions, the City failed to route collected gases to the west flare, allowing them to escape into the air untreated.

78. On numerous occasions, the City failed to shut down gas-collection wells within an hour after their respective flares became disabled.

79. Under 40 C.F.R. § 60.753(f), the City must operate the flare or other treatment system at all times when the GCCS is collecting gas.

80. Between January 2011 and December 2015, the City failed to operate the west flare on more than 570 days and failed to operate various solar flares on numerous occasions.

81. On numerous occasions, the City did not stop the venting of untreated gases from passive wells with disabled solar flares.

82. The violations set forth in Paragraphs 74 through 81 subject the City to injunctive relief and civil penalties as set forth in Paragraph 42.

### Third Claim for Relief

**Violation of Title V permit, Indiana State Plan, and Sections 111 and 112 of the CAA – Failure to Demonstrate Compliance with Surface Methane Standard**

83. Paragraphs 1 through 68 are realleged and incorporated by reference.

84. The City's 2012 and 2014 Title V permits; Indiana's 111(d) State Plan, 326 Ind. Admin. Code 8-8; and the MSW landfill NESHAP, 40 C.F.R. part 63, subpart AAAA, each require the City to comply with 40 C.F.R. §§ 60.753(d), 60.755(c).

85. Under 40 C.F.R. §§ 60.753(d), 60.755(c)(1), the City is required to conduct quarterly monitoring of the surface concentration of methane and operate the GCCS to maintain methane levels at less than 500 parts per million above the background level. 40 C.F.R. § 60.755(c) requires owners and operators to re-monitor within 10 calendar days the location of any detected exceedance.

86. The City had never monitored methane at the surface of the Landfill until December 15 and 16, 2015.

87. The monitoring conducted on December 15 and 16, 2015 detected exceedances of the surface methane standard at four locations, and the City did not re-monitor the location of the detected exceedance.

88. The violations set forth in Paragraphs 83 through 87 subject the City to injunctive relief and civil penalties as set forth in Paragraph 42.

### Fourth Claim for Relief

**Violation of Title V permit, Indiana State Plan, and Sections 111 and 112 of the CAA – Failure to Monitor Proper Operation of the Flares**

89. Paragraphs 1 through 68 are realleged and incorporated by reference.

90. The City's 2012 and 2014 Title V permits; Indiana's 111(d) State Plan, 326 Ind. Admin. Code 8-8; and the MSW landfill NESHAP, 40 C.F.R. part 63, subpart AAAA, each require the City to comply with 40 C.F.R. § 60.756(c).

91. Under 40 C.F.R. § 60.756(c), the City is required to install, calibrate, maintain, and operate a device capable of verifying the presence of a flame and a device capable of recording the gas flow to, or bypass of, the flare.

92. The City has not installed either a flame-sensing device or a flow meter on any of its flares.

93. The violations set forth in Paragraphs 89 through 92 subject the City to injunctive relief and civil penalties as set forth in Paragraph 42.

### Fifth Claim for Relief

**Violation of Title V permit, Indiana State Plan, and Sections 111 and 112 of the CAA – Failure to demonstrate compliance with gas collection wellhead standards**

94. Paragraphs 1 through 68 are realleged and incorporated by reference.

95. The City's 2012 and 2014 Title V permits; Indiana's 111(d) State Plan, 326 Ind. Admin. Code 8-8; and the MSW landfill NESHAP, 40 C.F.R. part 63, subpart AAAA, each require the City to comply with 40 C.F.R. § 60.755(a)(3), (5).

96. Under 40 C.F.R. § 60.755(a)(3), (5), the City is required to monitor the gauge pressure, temperature, and nitrogen or oxygen concentration at each well on a monthly basis.

97. The City did not monitor its 10 active gas-collection wells for wellhead pressure, temperature, or oxygen/nitrogen concentration on numerous occasions before April 12, 2016.

98. The violations set forth in Paragraphs 94 through 97 subject the City to injunctive relief and civil penalties as set forth in Paragraph 42.

## Prayer for Relief

WHEREFORE, Plaintiff United States of America respectfully requests that this Court:

99. Permanently enjoin the City from further violations of the CAA, 42 U.S.C. § 7401 *et seq*., Indiana's 111(d) State Plan, and their implementing permits and regulations;

100. Order that the City promptly take all steps necessary or appropriate to ensure compliance with the foregoing laws, regulations, and permits and to mitigate the effects of its past violations;

101. Enter judgment assessing civil penalties against the City for up to the amounts provided in the CAA;

102. Award the United States its costs in this action;

103. Award such other relief as this Court may deem just and proper.

Respectfully submitted,

For the United States of America

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

s/ Nicholas A. McDaniel
NICHOLAS A. McDANIEL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division

                    United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611
Phone:  (202) 514-0096
Fax:  (202) 616-6584


THOMAS L. KIRSCH II
United States Attorney


WAYNE T. AULT
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, Indiana  46320
Telephone:  219-937-5500
Telecopy:  219-852-2770